613 A.2d 569

COMMONWEALTH of Pennsylvania

v.

**Walter GARNETT, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted May 4, 1992.

Filed Aug. 11, 1992.

Patrick J. Connors, Media, for appellant.

William H. Ryan, Jr., Dist. Atty., Vram Nedurian, Jr., Asst. Dist. Atty., Media, for Com., appellee.

Before WIEAND, JOHNSON and MONTGOMERY, JJ.

WIEAND, Judge:

Appellant, Walter Garnett, Jr., has appealed from an order denying his petition for post-conviction relief. In a brief filed by appointed counsel, it is argued that trial counsel was constitutionally ineffective for failing to seek the suppression of inculpatory statements made by appellant following an arrest which is alleged to have been illegal because it was made in violation of the Statewide Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8953. Appellant has also filed a pro se supplemental brief in which he avers that his court appointed PCRA counsel was ineffective for failing to raise in this appeal additional instances of trial counsel's ineffectiveness.

Garnett was tried by jury and, on October 3, 1975, was found guilty of second degree murder, rape, involuntary deviate sexual intercourse and criminal conspiracy. Post-trial motions were denied, and appellant was sentenced to life in prison for murder and to concurrent terms of imprisonment for the remaining convictions. A direct appeal was filed in the Superior Court, which affirmed the judgment of sentence. See: *Commonwealth v. Garnett*, 267 Pa.Super. 41, 405 A.2d

1293 (1979). On February 6, 1989, appellant filed a pro se petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq. Following the appointment of counsel, an evidentiary hearing was scheduled. At the time of the hearing, however, appellant decided to submit his petition to the PCRA court for decision without presenting evidence. On June 20, 1991, the PCRA court issued an order denying appellant's petition for post-conviction relief. This appeal followed.

The factual scenario which led to appellant's arrest and conviction was summarized in the post-trial opinion of the trial court in the following manner:

The body of Lauren Whitaker, a seven year old girl, was found October 24, 1974 in a vacant room at 710 West Third Street, Chester, Pennsylvania. The child had been sexually molested and murdered. The father of defendant, Walter Garnett, Jr., lived in the building where the child was found and the defendant was living with the victim and her mother. During the resulting criminal investigation, Garnett was questioned numerous times concerning the child's death. He was not considered, at that time, to be a suspect.

Late in April, 1975, Garnett contacted the Chester Police Department on several occasions indicating that he had further information pertaining to the crimes. After some preliminary conversations with the defendant, he was picked up by the police, at his own request, early in the morning of April 29, 1975 to discuss the matter fully. On that occasion, following a review of his constitutional rights, Garnett admitted knowledge of certain undisclosed circumstances surrounding the discovery of the victim's body. Among other information, the defendant described his father's admission that he had killed Lauren Whitaker. Being rather surprised at the disclosures, the police proposed that Garnett submit to a polygraph test in Philadelphia. The defendant voluntarily accompanied the police to Philadelphia where the test was performed. At the conclusion of the test and after his rights were again detailed, the defendant offered a statement admitting his presence at and participation with

his father in the crimes against the victim, Lauren Whitaker. He was promptly arrested and returned to Chester.

On the defendant's arrival in Chester, early in the evening of April 29, 1975, a further statement was obtained from him. At all times, he was well advised of his rights and offered food and drink. While Garnett appeared emotional at times, the evidence reflected that the statements were given without coercion and that he appeared almost relieved to discuss the incident. He was arraigned at approximately 8:30 p.m., April 29, 1975, before the District Justice.

Trial Court Opinion at pp. 1–2 (filed February 3, 1977).

Appellant argues that his arrest in Philadelphia by the Chester Police violated the provisions of the Statewide Municipal Police Jurisdiction Act and that any subsequent inculpatory remarks were the product of an illegal arrest. As such, his argument continues, trial counsel should have asserted the violation of the Act as a basis for suppressing his inculpatory statements. We disagree.

"Because the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant." *Commonwealth v. House*, 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988). The standard utilized to evaluate claims of ineffective assistance of counsel has been stated by the Pennsylvania Supreme Court as follows:

The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Durst,* 522 Pa. 2, 4–5, 559 A.2d 504, 505 (1989). Pursuant to the Post Conviction Relief Act, "a petitioner *must not only* establish ineffective assistance of counsel, petitioner *must also* establish that the ineffectiveness was of a type 'which in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.' " *Commonwealth v. Thomas,* 396 Pa.Super. 92, 98, 578 A.2d 422, 425 (1990), quoting 42 Pa.C.S. § 9543(a)(2)(ii).

■ In pertinent part, the Statewide Municipal Police Jurisdiction Act provides as follows:

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(1) Where the officer is acting pursuant to an order issued by a court of record or an order issued by a district magistrate whose magisterial district is located within the judicial district wherein the officer's primary jurisdiction is situated, or where the officer is otherwise acting pursuant to the requirements of the Pennsylvania Rules of Criminal Procedure, except that the service of an arrest or search warrant shall require the consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which regularly provides primary police services in the municipality wherein the warrant is to be served.

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

64

(3) Where the officer has been requested to aid or assist any local, State or Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer, or a person authorized by him to give consent, of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

(6) Where the officer views an offense which is a felony, or has probable cause to believe that an offense which is a felony has been committed, and makes a reasonable effort to identify himself as a police officer.

42 Pa.C.S. § 8953(a).

Instantly, the Chester Police had taken appellant to Philadelphia for the purpose of a polygraph test, which appellant had agreed to take. Under these circumstances, it is clear that the Chester Police were on official business when they transported appellant to Philadelphia. Moreover, when, upon completion of the polygraph test, appellant admitted his involvement in the murder of Lauren Whitaker, the Chester Police then had probable cause to place appellant under arrest. Police conduct, therefore, was lawful and in accordance with 42 Pa.C.S. § 8953(a)(5) and/or (a)(6). It follows that trial counsel was not ineffective for failing to aver an illegal arrest.

■ Moreover, even if a technical violation of the Municipal
Police Jurisdiction Act had occurred, the suppression of appel-
lant's inculpatory statements " 'would be a remedy all out of
proportion to the benefits gained to the end of obtaining
justice while preserving individual liberties unimpaired.' "
*Commonwealth v. Saul,* 346 Pa.Super. 155, 162, 499 A.2d 358,
361 (1985), quoting *United States v. Searp,* 586 F.2d 1117,
1123 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247,
59 L.Ed.2d 474 (1979). "[S]uppression of evidence may or
may not be the appropriate remedy for a violation of section
8953 of the Act, depending upon all of the circumstances of the
case including the intrusiveness of the police conduct, the
extent of deviation from the letter and spirit of the Act, and
the prejudice to the accused." *Commonwealth v. O'Shea,* 523
Pa. 384, 399, 567 A.2d 1023, 1030 (1989), *cert. denied,* —— U.S.
——, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990). See also: *Com-
monwealth v. Fetsick,* 392 Pa.Super. 264, 272–273, 572 A.2d
793, 797 (1990). Here, appellant had the benefit of *Miranda*
warnings prior to making his inculpatory remarks, and both
the trial court and Superior Court have already determined
that the inculpatory statements were voluntarily given by
appellant. Thus, even if appellant's arrest were technically in
violation of 42 Pa.C.S. § 8953, the circumstances of the instant
case would not warrant the suppression of the inculpatory
statements which he voluntarily gave to police.

There also is no basis in this case for finding PCRA counsel
ineffective for failing to raise additional claims of ineffective
assistance by trial counsel. In his pro se brief, appellant
asserts that trial counsel was ineffective for (1) failing to
challenge the systematic exclusion of blacks from appellant's
jury pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.
1712, 90 L.Ed.2d 69 (1986); (2) failing to challenge the 13 hour
delay between appellant's arrest and arraignment; and (3)
failing to request a change of venue due to extensive pre-trial
publicity. These allegations are wholly lacking in merit and
provide no basis for relief.[1]

1. Because it is clear from the record that the additional issues raised by
appellant are so lacking in merit as to be frivolous, we have elected to

 Appellant's trial counsel was not ineffective for failing to assert that his jury was selected in a racially discriminatory manner in violation of the principles set forth in *Batson v. Kentucky, supra.* Appellant was convicted in 1975, more than ten years before the United States Supreme Court's 1986 decision in *Batson.* Trial counsel will not be deemed ineffective for failing to predict future developments in the law. See: *Commonwealth v. Triplett,* 476 Pa. 83, 89–90, 381 A.2d 877, 881 (1977); *Commonwealth v. Carter,* 409 Pa.Super. 184, 190–192, 597 A.2d 1156, 1159–1160 (1991). Moreover, the decision in *Batson,* it has been held, is not to be applied retroactively to cases on collateral review. See: *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); *Commonwealth v. Green,* 365 Pa.Super. 142, 529 A.2d 13 (1987); *Commonwealth v. Williams,* 364 Pa.Super. 630, 528 A.2d 980 (1987). Therefore, *Batson* has no application in appellant's appeal from the denial of his petition for post-conviction relief.

 Whether an unreasonable delay had occurred between appellant's arrest and arraignment was raised in appellant's pre-trial suppression motion, his post-trial motions and in his direct appeal to the Superior Court. Both the trial court and Superior Court found his contention lacking in merit. This issue, therefore, has been finally litigated and cannot now be asserted as a post-conviction basis for challenging the effectiveness of trial counsel. See: 42 Pa.C.S. § 9544(a).

 Finally, there is no basis in the record before this Court for holding trial counsel ineffective for failing to file a motion for change of venue prior to appellant's trial. In support of this claim, appellant attached to his PCRA petition three newspaper articles discussing the circumstances of his crimes. However, two of these articles were written after

decide these issues on the merits even though they have been argued only in appellant's pro se brief. To remand for the appointment of new counsel to argue appellate counsel's ineffectiveness in these respects or for further proceedings in the trial court would not only be fruitless but would constitute an inefficient use of judicial resources. Therefore, we have examined and rejected appellant's frivolous pro se arguments simultaneously with our consideration of the arguments made by appellate counsel.

appellant had been convicted. The third article did not extensively discuss the circumstances of the crimes and was neither sensational nor inflammatory in nature. Thus, there simply is no evidence in the record of any extensive or pervasive pretrial publicity which would have entitled appellant to a change of venue. See: *Commonwealth v. Tedford,* 523 Pa. 305, 323–325, 567 A.2d 610, 618–619 (1989). We conclude, therefore, that appellant failed to allege a valid claim that trial counsel was ineffective for failing to file a motion for a change of venue.

The order denying post-conviction relief is affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I believe that the claimed ineffective assistance of counsel could not have implicated the truth-determining process in this case in any manner. I also believe we are precluded from examining those claims set forth in the appellant's pro se supplemental brief. Since I believe we should neither reach an examination of the Statewide Municipal Police Jurisdiction Act nor review appellant's pro se claims, I must respectfully dissent.

The sole issue set forth in the brief filed on behalf of Walter Garnett, Jr. by the Public Defender's Office is:

Whether trial counsel was ineffective in not raising and preserving the issue as to whether Appellant's arrest was illegal since the arrest occurred outside of the jurisdiction of the arresting officers.

Brief of Appellant, Statement of Question Involved, page 3.

On his direct appeal from judgment of sentence, Garnett argued that the confessions he had made to police, evidence of which the trial court refused to suppress and which was used against him at trial, were the product of an unnecessary delay between arrest and arraignment. In rejecting this claim, this court found:

Garnett himself first contacted police to offer information he said he had withheld at the time of the crimes six months

before. After several conversations with police, Garnett requested they pick him up and take him to the station for a discussion. He was picked up at 8:30 a.m. and transported to the police station. On his arrival, he was informed he was not in custody and was free to leave, and he was given *Miranda* warnings. Between 9:00 and 9:30 a.m., he gave a statement implicating his father in the crimes. The police requested he submit to a polygraph examination in Philadelphia to which he agreed. On arrival in Philadelphia at noon and after *Miranda* warnings, Garnett took the polygraph examination, and, immediately after completion of the examination at 3:30 p.m., he admitted his own involvement. Only at that time did he become a suspect. He was placed under arrest and again given *Miranda* warnings, and he then gave a statement and signed a transcription. Garnett was returned to Chester and fed, and a confirmatory statement was taken after *Miranda* warnings. His arraignment took place at 7:30 or 8:30 p.m. that evening. Thus there was a delay of five hours at most between Garnett's arrest and arraignment. Under the circumstances, the statement could not have been the product of unnecessary delay because there was no unnecessary delay. *See Commonwealth v. Coley,* 466 Pa. 53, 351 A.2d 617 (1976) (Plurality Opinion).

*Commonwealth v. Garnett,* 267 Pa.Super. 41, 43, 405 A.2d 1293, 1294 (1979).

In order to be eligible for relief under the Post Conviction Relief Act, as amended April 13, 1988, P.L. 336, No. 47, § 3, 42 Pa.C.S. §§ 9541 *et seq.* (1992 Supp.), a person claiming ineffective assistance of counsel must plead and prove, in addition to other requirements:

That the conviction or sentence resulted from ...

. . . .

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S. § 9543(a)(2)(ii). This provision, enacted in 1988 and applicable on this appeal, reflects a legislative perception that courts had been too generous in entertaining claims for relief under the former statute. *Commonwealth v. Lawson*, 519 Pa. 504, 513 n. 12, 549 A.2d 107, 112 n. 12 (1988).

All of the recent decisions of this Court are uniform in applying the stringent requirements of § 9543(a)(2)(ii). Thus, in *Commonwealth v. Weinder*, 395 Pa.Super. 608, 577 A.2d 1364 (1990), this Court acknowledged that it is not enough for an appellant to show that he or she has suffered some prejudice as a result of counsel's action or inaction, but rather that counsel's action or inaction so affected the trial itself (the "truth-determining process") that the result of the trial is inherently unreliable. *Id.*, 395 Pa.Superior Ct. at 625, 577 A.2d at 1374. In *Weinder*, the matter was remanded for further proceedings, in part because it was clear, under *Commonwealth v. Pounds*, 490 Pa. 621, 634 n. 17, 417 A.2d 597, 603 n. 17 (1980), that a correct alibi instruction is an essential part of the truth determining process.

We have several recent cases where it has been determined, as a matter of law and without resort to any traditional three-prong ineffectiveness analysis, that eligibility for PCRA relief is not available. In *Commonwealth v. Hanes*, 397 Pa.Super. 38, 45, 579 A.2d 920, 923 (1990), we recognized that the amendment appearing as 42 Pa.C.S. § 9543(a)(2)(ii) "is a substantial restriction of the grounds for post-conviction collateral relief in Pennsylvania," citing to *Commonwealth v. Thomas*, 396 Pa.Super. 92, 98, 578 A.2d 422, 425 (1990). In *Thomas*, there was dictum suggesting that the new subsection mandates a two-step analysis and that a court must first apply the "well-settled three prong standard for ineffectiveness to determine if counsel was ineffective." *Id.* The later cases indicate, however, that this suggested two-step analysis is not required.

In *Hanes, supra*, we held that trial counsel's failure to poll the jury "when it was obvious that its verdict was inconsistent," does not raise a claim that undermines the truth-determining process. Thus, we found that the issue was not

cognizable under the PCRA. *Id.*, 397 Pa.Superior Ct. at 45, 579 A.2d at 923. Similarly, in *Commonwealth v. Pitts*, 397 Pa.Super. 387, 393, 580 A.2d 352, 355 (1990), we held that counsel's failure to seek severance where both charges stemmed from the same criminal incident was not cognizable on its face, since severance of charges to which the defendant obviously was guilty did not implicate the reliability of the truth-determining process. To the same effect, we have recently held that 42 Pa.C.S. § 9543(a)(2)(ii) precludes analysis based upon the traditional three-prong standard, where the claim of ineffectiveness is based upon factual inaccuracies. *Commonwealth v. Senk*, 399 Pa.Super. 627, 631 n. 4, 582 A.2d 1119, 1121 n. 4 (1990).

When I apply the principles announced in these cases to the appeal now before this court, I am unable to agree with the majority that an analysis of the legality of the arrest and the possible applicability of the Statewide Municipal Police Jurisdiction Act is necessary to our decision on this appeal. Nowhere in Garnett's 24–page petition filed under the PCRA does he allege that any violation "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." Nor does he advance such an argument in his brief to this court. *Commonwealth v. Laskaris*, 407 Pa.Super. 440, 444–45, 595 A.2d 1229, 1231 (1991).

We have held that, where an issue does not bear upon a defendant's ultimate guilt or innocence, and where the defendant fails either to explain how the truth-determining process was undermined, or to allege that counsel's actions prevented a reliable determination of guilt or innocence, the claim is not cognizable under the PCRA *Commonwealth v. Tanner*, 410 Pa.Super. 398, 405, 600 A.2d 201, 205 (1991). *See also Commonwealth v. Grier*, 410 Pa.Super. 284, 288, 599 A.2d 993, 995 (1991) (collecting cases).

As the Opinion by the majority on this appeal points out, both the trial court and this court have already determined that the inculpatory statements were voluntarily given by Garnett. That is the law of this case. *Commonwealth v. Goldblum*, 498 Pa. 455, 473, 447 A.2d 234, 243 (1982); *Com-*

*monwealth v. Lenig,* 403 Pa.Super. 455, 460, 589 A.2d 700, 702–703 (1991). Garnett's arrest in Philadelphia by the Chester Police could not, in any way, have undermined the truth-determining process where this court has already determined that the inculpatory statements were voluntarily given. Since the truth-determining process was not undermined by Garnett's arrest in Philadelphia, the adjudication of guilt may not be challenged under the PCRA on these allegations. 42 Pa.C.S. § 9543(a)(2)(ii).

Moreover, the notes of testimony from the PCRA hearing held on June 5, 1989 have not been included in the record certified to this court and may not have even been transcribed. In his Opinion prepared pursuant to Pa.R.A.P. 1925 and dated February 19, 1992, the Honorable William R. Toal, Jr., P.J. states:

> The defendant filed a pro se Petition for Post Conviction Relief alleging that his confessions were obtained by deception and fraud and were not voluntary. He further alleges that his arrest was illegal, in that he was arrested in Philadelphia outside of the jurisdiction of the Chester Police Department. Finally, he alleges without further specificity that his trial counsel was ineffective. A hearing was scheduled on the defendant's post-conviction allegations and the defendant appeared in court represented by counsel from the Delaware County Public Defender's Office. Counsel for the defendant advised the court that he and his client did not wish to present any testimony but would prefer to have the court consider the Post–Conviction Petition and the answer . . . without the benefit of supplemental testimony or evidence. We inquired of the defendant whether or not he wished to proceed with this matter and he advised the court that he was satisfied with his . . . counsel and that he did not wish to present any additional evidence at the hearing on the defendant's petition. After reviewing the petition and the response filed by the Commonwealth, the . . . Petition was denied on June 20, 1991.

Opinion, Toal, P.J., February 19, 1992, pages 1–2. None of these assertions are contested by Garnett, either in his Brief or in the pro se Supplemental Brief.

Because Garnett has failed to allege that the truth-determining process has been undermined, and because the facts contained in his petition simply could not support such a claim, I would conclude that the sole claim raised in Garnett's original Brief for Appellant is not cognizable under the PCRA. *Commonwealth v. Laskaris, supra, Commonwealth v. Tanner, supra.* I, therefore, would not consider whether the Statewide Municipal Police Jurisdiction Act had been violated.

I must also respectfully disagree with my colleagues' decision to review the additional claims found in Garnett's pro se Supplemental Brief. On this appeal, a counseled brief was filed on behalf of Garnett on April 6, 1992. Prior to that, Garnett's pro se Supplemental Brief was filed on April 1, 1992.

In *Commonwealth v. Ellis*, 398 Pa.Super. 538, 581 A.2d 595 (1990), *appeal allowed* 528 Pa. 636, 598 A.2d 992 (1991), we had occasion to consider and revisit this court's policy regarding pro se briefs. In an *en banc* decision, we there declared:

> We will accept for filing *pro se* appellate briefs, but we will not review a *pro se* brief if a counseled brief has been filed, either before, simultaneously with, or after the *pro se,* due to the judicial confusion and delay that ensues. Because we refuse to play a timing game or that of a mind reader, trying to determine what the *pro se really* wants, we see no difference as to when the *pro se* brief is filed in relation to the counseled brief. If a *pro se* brief is filed in a counseled appeal, we direct the prothonotary to send the *pro se* brief on to counsel who is best able to determine in her professional judgment which of the *pro se's* issues should be presented for our review.

*Commonwealth v. Ellis,* 398 Pa.Superior Ct. at 550, 581 A.2d at 600 (emphasis in original).

Garnett has alleged the ineffectiveness of his PCRA counsel in his Supplemental Brief. Since PCRA counsel continues to represent Garnett on this appeal, counsel would have been required to petition this court to remand the case to the trial court for a hearing on Garnett's waiver of his right to counsel and his desire to proceed pro se. *Commonwealth v. Ellis, supra,* 398 Pa.Superior Ct. at 550, 581 A.2d at 600–601. When

a three-judge panel of this court further considered *Ellis*, it held that appointed counsel, upon review of the pro se allegations of ineffectiveness should petition this court for a remand, citing the client's allegations of ineffectiveness. *Commonwealth v. Lawrence*, 408 Pa.Super. 9, 14, 596 A.2d 165, 168 (1991). It is only after such a petition for remand that this court, relying on *Commonwealth v. McBee*, 513 Pa. 255, 261, 520 A.2d 10, 13 (1986), may decide whether a remand is in fact required. *Id.*

I am unaware of any law since *Ellis* and *Lawrence* which operates to make the directives contained therein no longer binding on this three-judge panel. I therefore would decline to review the contentions contained in Garnett's pro se Supplemental Brief until compliance with the dictates of *Ellis* and *Lawrence* had been demonstrated.

For all of the above reasons, I must dissent.